# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT JOAQUIN GRANADOS,<br><br>　　　　　　　　　Petitioner,<br><br>v.<br><br>W.L. MONTGOMERY, Warden,<br><br>　　　　　　　　　Respondent. | Case No.:  19cv0517 GPC (NLS)<br><br>**ORDER: (1) DENYING HABEAS CORPUS PETITION; and (2) DENYING CERTIFICATE OF APPEALABILITY** |

## I.　　INTRODUCTION

Petitioner Robert Joaquin Granados, a state prisoner proceeding with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition" or "Pet."), challenges his conviction for assault with a deadly weapon, attempted murder, active participation in a criminal street and criminal street gang and true findings regarding weapons allegations in Riverside Superior Court case no. RIF1100160.  The Court has read and considered the Petition [ECF No. 1], the Answer and Memorandum of Points and Authorities in Support of the Answer [ECF Nos. 8, 8-1], the lodgments and other documents filed in this case, and the legal

/ / /

/ / /

/ / /

arguments presented by both parties.[1]  For the reasons discussed below, the Court **DENIES** the Petition.

## II.    FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parle v. Fraley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The state appellate court recounted the facts as follows:

### 1. The Scott F. Incident, November 23, 2010, Count 1

On November 23, 2010, at approximately 5:30 p.m., Scott F.'s mother and sister returned to his mother's apartment with groceries, which Scott helped unload.  Scott lived with his mother in an apartment in the complex, and his sister Sarah M. lived in a different apartment in the same complex. As Scott brought in the groceries, he was passed by a group of Hispanic males, walking single file.  He squinted trying to recognize them.  The last person to pass him said something to him about mad-dogging them, and then stabbed Scott from behind.

Sarah M. heard her brother scream that he had been stabbed and called 911.  She was familiar with defendant because her oldest brother was a friend of defendant's.  In the 911 call, which was played for the jury, defendant was identified as the person who stabbed Scott.  Officer Ditty responded to the scene and contacted Sarah, who was reluctant to speak out of fear of retaliation.  However, at that interview, she eventually disclosed that it was defendant who stabbed her brother.  At trial, she did not remember her brother telling her who had stabbed him, or telling police she was afraid of retaliation.

In the hospital, Officer Cruz contacted Scott, who gave a summary of the incident as described above.  Officer Cruz asked if defendant was the person who stabbed him, and Scott answered in the affirmative after first

[1] Page numbers for docketed materials cited in this Order refer to those imprinted by the court's electronic case filing system.

19cv0517 GPC (NLS)

stating he did not know who stabbed him. Scott had known defendant for most of his life. He picked defendant's picture out of a photographic lineup while still in the hospital. He also recognized one of the other people with defendant as defendant's uncle, Ali.

At trial, Scott testified he did not get a good look at the person and did not know who stabbed him. He did not recall identifying defendant as the stabber, picking his picture out of the photographic lineup, or telling the officer he knew one of the other men in the group. However, he did recall hearing something about a threat after the incident.

While defendant was in custody, a letter was found during the execution of a search warrant at the residence of Carlos Montes, a member of the Northside Beaumont gang to which defendant belonged. The letter was dated February 13, 2011, and was signed by "Sicko." [FN 3 omitted]. A gang expert testified that defendant's gang moniker was "Sicko." In the letter, Sicko sought to have "Smoke" (Carlos Montes) and "Shorty" go with Sicko's dad to pay a visit to Scott with "Wacko" to scare Scott with a "strap" (gun).

Defendant was released on bail for the Scott F. incident on May 3, 2011.

2. The Willie D. Incident, October 15, 2011, Count 3

On October 15, 2011, Willie D. was at his ex-wife's house to act as security at a party for his son, Willie D., Jr. on Grace Street in Beaumont. There were approximately 50 to 100 people at the party, of different races and ethnicity. For the most part, it was a friendly party. But there was a group of Hispanics wearing hoodies off to the side. Shawnshana I. (Shawnie), a friend of Willie's daughter Sheree, was dancing near the group of Hispanics and bumped into one of them, resulting in an argument. Willie D., Jr. informed his father, Willie D., that some uninvited guests were present and there were arguments. Willie D., Jr., asked his father to ask the group to leave.

When he got outside, Willie D. saw a person wearing a tank top who was "huffing and puffing" and looking upset. Willie D. went up to the individual, later identified as defendant, tapped defendant on the arm, and asked defendant what was going on. Defendant was upset, so Willie asked defendant to leave. Defendant punched Willie in the face. Willie began

fighting with defendant and was being hit from all sides. Willie was struck on the back of the head and in the face with the butt of a knife. [FN 4: Another incident occurred at the party, involving Ian R., who was stabbed after the altercation with Willie D., which formed the basis for count 2 of the second amended information. However, defendant was acquitted of that count.] He suffered a black eye and a gash on the back of his head. Shawnie told police she was three feet away and could see the man who struck Willie D. clearly.

Willie told Officer Ditty, who was dispatched to the scene, that the chubby Hispanic male who punched him also swung a knife at him; Willie did not mention other people behind him who swung a knife, except after he fell to the ground trying to dodge the knife. Willie D. told Officer Ditty at the scene that he could identify the attacker with the knife, so, based on other information obtained at the scene, Officer Ditty went to the police station and to prepare a six-pack photographic lineup. He showed the lineup to Willie in the kitchen of the house where the party had been held, in the presence of Shawnie. Willie pointed to defendant's photograph but was not a hundred percent sure. Shawnie pointed to defendant's picture and identified him by name.

At trial, Willie insisted that the person who struck him with the knife was someone other than the defendant. He denied telling Officer Ditty at the scene that the same person who punched him also pulled a knife on him. Also at trial, Shawnie denied personally being involved in the argument with defendant or that she personally saw anything, explaining that it was her friend Sheree who was involved, and that later, when Willie was shown the lineup, it was Sheree who got into the argument with the men who hit Willie D., and pointed out defendant's picture; Shawnie just relayed the information to the officer. Contrary to Shawnie's testimony that Sheree was present for the interview on the night of the incident, Officer Ditty testified that he interviewed Shawnie alone.

3. The Isidro F. Incident, November 1, 2011, Count 5

On November 1, 2011, Isidro F. was stabbed twice in the ribs and once in the bicep. Officer Velasquez responded to [the] scene where Isidro was lying on the ground, bleeding from his chest, moaning in pain. Officer Velasquez accompanied Isidro F. in the ambulance to the hospital because he was unsure if Isidro would survive. In the ambulance, Officer Velasquez asked Isidro F. who stabbed him, but Isidro stated he was not a snitch. The

4

officer kept questioning Isidro in case Isidro died, until finally Isidro stated it was a "Southsider," referring to the South Side Beaumont gang. Officer Velasquez relayed this information to his watch commander at the police station.

As the officer relayed this information to the watch commander, Isidro volunteered that he was not a gangster, and then said something to the effect of, "You know who did this to me; Bobby, South Side Beaumont Fourth Street." The officer continued to press Isidro for identifying information, but Isidro would not say defendant's last name, only that he "kicked it" with Eighth Street, referring to another gang, North Side Beaumont, that claimed Eighth Street. When asked if Bobby had family in Beaumont, Isidro explained that the whole city was his family, and Isidro described Bobby as being bald, and wearing a black tank top.

At the hospital, Officer Velasquez accompanied Isidro to the emergency room where he resumed questioning after Isidro had been stabilized. During this conversation, Isidro explained that he had been arguing with his girlfriend, who appeared to see something behind Isidro. Isidro was sucker-punched in the face, and then stabbed in the left side of his chest. When he dropped his arm to protect himself, he was stabbed in the bicep, but continued to fight a little until he felt a sharp pain on the left side of his body, at which point he collapsed. Isidro told Officer Velasquez it was a Granados. [FN 5 omitted.]

Officer Velasquez continued to press Isidro for information, asking him why defendant would stab him. Isidro explained it was a "beef" that [went] "way back" to a time which Isidro had accused defendant of raping a female, leading to a fight. Isidro believed the stabbing was done in retaliation. Based on all the information obtained from Isidro, which was relayed to the watch commander, a six-pack photographic lineup was prepared and brought to the hospital at about 1:30 a.m. Isidro pointed to defendant's photograph, but refused to circle or sign the lineup.

Other officers who had responded to the scene reported that defendant had run into an apartment complex. It was learned that defendant had a cousin, Ernie Granados, who lived in that complex. Because Ernie was on probation, the officers knew they could search his apartment without a warrant. The officers made entry to the apartment where defendant was observed; defendant jumped out of the second story window to the ground below, where he was pursued by other officers and taken into custody after a

brief struggle. During the struggle, defendant was struck with an officer's knee on his left side and with a forearm on the side of defendant's face. A search of Ernie's apartment revealed a black tank top and a knife inside a shirt on the floor.

At the station, defendant was treated by paramedics in a temporary holding cell. During the paramedics' examination of defendant, one of them asked defendant if he knew why he was there. Defendant explained that he had stabbed someone and had run from the police. In the videotape of the contact, this statement by defendant is not audible.

At trial, Isidro did not recall anything about the incident, claiming he had been drinking heavily. Isidro also denied knowing defendant or defendant's family, being familiar with Beaumont gangs, or telling the officer that the stabbing was payback for accusing defendant of raping a woman. He also did not recall telling the police that he did not want to be a snitch, or identifying defendant from a photographic lineup.

4. <u>Gang Evidence, Counts 4 and 6</u>

Officer Liam Doyle, who had participated in defendant's apprehension at the apartment of Ernie Granados, testified as a gang expert. He described the origins of the North Side and South Side Beaumont gangs, as it devolved after a gang known as Los Midnighters split along the Interstate 10 Freeway or the railroad tracks just south of the freeway. In 2010 and 2011, both the North Side and South Side gangs were on friendly terms, but currently the two sides are at war.

The three incidents forming the basis for the charges against defendant took place in the territory of the two separate gangs. The incident involving Willie D. (and Ian R.) occurred in the territory of the South Side Beaumont gang, while the other two incidents occurred in the territory claimed by North Side Beaumont. Fourth Street was on the south side of the boundary, while Eighth Street was on the north side, and was a subset of South Side. Thus, Isidro F.'s statement referred to the fact that South Side and North Side were trans-territorial at the time.

The primary activities of the North Side Beaumont gang comprise violent felony assaults, thefts, robberies, attempted murders, assaults with deadly weapons, and vandalism. Gang members frequently go to other territories to commit crimes. As predicate crimes, the expert offered a prior

conviction of Vincent Lucero, a member of North Side Beaumont, for assault by means likely to produce great bodily injury, with an enhancement for knife use, committed in 2010, and defendant's prior conviction for robbery with an enhancement alleging the robbery was committed for the benefit of a criminal street gang, in 2008.

The gang expert began to come across defendant in 2008. [FN 6 omitted.] Defendant has tattoos of "MDS" (for Midnighters) on his right tricep, as well as "NSB" (for North Side Beaumont) on his left tricep, and "B" for Beaumont on his chest. A photograph taken of defendant in 2011 shows the tattoos he had upon arrest. Between the time of defendant's booking in jail in 2011, and 2013, defendant acquired a new tattoo in his hairline, which says "Beaumont," while in custody.

Also, while defendant was in custody, a search warrant was executed on the house of another gang member, Carlos Montes, whose moniker is "Smoke." In the course of that search, a letter dated February 13, 2011, sent by "Sicko" and addressed to "Smoke" [FN7 omitted] was found. Based on his tattoos, the letter sent to Montes, and the individuals defendant hung out with, as well as the fact he had a prior gang related robbery conviction, Officer Doyle was of the opinion that defendant was an active member of the North Side Beaumont gang in 2011.

Considering the hypothetical situation where a documented member of North Side Beaumont was walking with other Hispanic males, passed by a white male and said, "Don't be mad-dogging my homies," the gang expert was of the opinion that the assault with a deadly weapon of Scott F. was committed for the benefit of a gang.

(Lodgment No. 7, ECF No. 9-12 at 3-11.)

## III. **PROCEDURAL BACKGROUND**

On June 12, 2015, the Riverside District Attorney's Office filed a six-count amended information charging Robert Joaquin Granados with two counts of assault with a deadly weapon, a violation of California Penal Code § 245(a)(1) (counts one and three), two counts of attempted murder, a violation of California Penal Code §§ 664/187 (counts two and five), and two counts of active participation in a criminal street gang, a violation of California Penal Code § 186.22(a) (counts four and six). (Lodgment No. 2 vol. 1, ECF No. 9-6 at 14-43.) As to count one, the information alleged Granados committed the

offense for the benefit of, at the direction of, and in association with a criminal street gang, within the meaning of California Penal Code § 186.22(b). (*Id.*) As to counts one, two and five, the information alleged that Granados personally inflicted great bodily injury, within the meaning of California Penal Code §§ 12022.7(a) and 1192.7(c)(8). (*Id.*) The information alleged as to counts two and five that Granados personally used a deadly weapon, within the meaning of California Penal Code §§ 12022.7(b)(1) and 1192.7(c)(23). (*Id.*) Count three alleged that the assault with a deadly weapon was part of a continuous course of conduct, within the meaning of California Penal Code §§ 667 and 1192.7(c)(31). (*Id.*) Finally the information alleged that Granados committed counts two through six while on bail, within the meaning of California Penal Code § 12022.1. (*Id.*)

Following a jury trial, Granados was convicted of counts one and counts three through six. (*Id*. at 199-208.) The jury also found the allegations attached to those counts. (*Id.*) The jury acquitted Granados of count two. (*Id.* at 200.) Granados was sentenced to seven years-to-life plus twenty-two years. (Lodgment No. 1 vol. 5, ECF No. 9-5 at 34-40.)

Granados appealed his conviction to the California Court of Appeal for the Fourth Appellate District. (Lodgment Nos. 4-6, ECF Nos. 9-9 – 9-11.) The state appellate court upheld Granados's conviction but found errors in Granados's sentence and modified it. (Lodgment No. 7, ECF No. 9-12.) Granados then filed a petition for review in the California Supreme Court, which denied the petition without citation of authority. (Lodgment Nos. 8-9, ECF Nos. 9-13 – 9-14.)

Granados filed a Petition for Writ of Habeas Corpus in this Court on March 18, 2019. (ECF No. 1.) Respondent filed an Answer and Memorandum of Points and Authorities in Support of Answer on April 25, 2019. (ECF Nos. 8, 8-1.) Granados filed a Traverse on May 23, 2019. (ECF No. 10.)

/ / /

/ / /

# IV. **DISCUSSION**

Granados's Petition contains four claims. Claims one and two concern the admission of an out-of-court statement by one of the victims, Isidro Fregoso. Granados contends the state court's determination that the admission of the statement was harmless error federal due process rights. (Pet., ECF No. 1 at 5.) He also contends the admission of the statement violated his right of confrontation under the Sixth Amendment. (*Id.* at 7.) In ground three he claims the evidence presented at trial that he actively participated in a criminal street gang, as alleged in count four, was insufficient. (*Id.* at 8.) Granados claims in ground four that the jury should have given a unanimity instruction. (*Id.* at 10.)

Respondent argues that claim one raises only issues of state law. (Answer, ECF No. 8-1 at 20-28.) As to claims two and three, Respondent contends the state court's rejection of the claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (*Id.* at 22-35.) Respondent argues that there is no federal right to a unanimity instruction and thus Granados has failed to state a federal claim in ground four. (*Id.* at 35-37.)

A. *Standard of Review*

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively

///

unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

/ / /

/ / /

/ / /

10

B.  *Grounds One and Two: Erroneous Admission of Evidence/Confrontation Clause Violation*

In ground one, Granados contends the trial court erroneously admitted the out-of-court statement of Isidro Fregoso as a spontaneous declaration.  (Pet., ECF No. 1 at 5-6.)  He claims the admission violated his due process and Confrontation Clause rights.  (*Id.*)  At trial, victim Isidro Fregoso claimed he could not remember most of the events that transpired the night he was stabbed.  (Lodgment No. 1 vol. 2, ECF No. 9-2 at 5-53.)  The prosecution sought to introduce Fregoso's statement to police as a spontaneous statement under California Evidence Code § 1240.  (Lodgment No. 1 vol. 3, ECF No. 9-3 at 106-09.)  After an evidentiary hearing, the trial judge permitted the prosecution to introduce Fregoso's statement to police corporal Francisco Velasquez in which he identified Granados as the person who stabbed him.  (*Id.* at 114-38.)

Respondent argues that to the extent Granados is challenging the state court's application of its own evidentiary rules, Granados is not entitled to federal habeas corpus relief.  (Answer, ECF No. 8-1 at 20-28.)  Respondent also argues the state court's resolution of Granados's Confrontation Clause claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (*Id.* at 28-31.)

Granados raised this claim in the petition for review he filed in the California Supreme Court.  (Lodgment No. 8, ECF No. 9-13.)  The California Supreme Court silently denied the petition.  (Lodgment No. 9, ECF No. 9-14.)  This Court must therefore "look through" to the last reasoned state court decision that addressed the claims as the basis for the Court's analysis.  *Ylst*, 501 U.S. at 805-06.

i.  *Admission of Fregoso's Statement as a Spontaneous Declaration*

The California Court of Appeal addressed Granados's claim that the evidence was erroneously admitted under California Evidence Code § 1240 as follows:

*(i) Spontaneous Declaration*

Under the spontaneous declaration hearsay exception, hearsay testimony is admissible if it "(a) [p]urports to narrate, describe, or explain an

19cv0517 GPC (NLS)

act, condition, or event perceived by the declarant; and [¶] (b) [w]as made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid. Code, § 1240; *People v. Chism* (2014) 58 Cal.4th 1266, 1288.) "'To render [statements] admissible [under the spontaneous declaration exception] it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it.'" (*People v. Poggi* (1988) 45 Cal.3d 306, 318 (*Poggi*).)

If the declarations are made under the immediate influence of the occurrence to which they relate, they are deemed sufficiently trustworthy to be presented to the jury. (*People v. Bryant*, Smith and Wheeler (2014) 60 Cal.4th 335, 416.) The basis for this assumption of trustworthiness is that in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and sincere expression of one's actual impressions and belief. (*Poggi*, *supra*, 45 Cal.3d at p. 318.)

The point in time when the statements in question were made and whether they were delivered directly or in response to a question are important factors to be considered on the issue of spontaneity. (*Poggi*, *supra*, 45 Cal.3d at p. 319.) However, "'[n]either lapse of time between the event and the declarations nor the fact that the declarations were elicited by questioning deprives the statements of spontaneity if it nevertheless appears that they were made under the stress of excitement and while the reflective powers were still in abeyance.'" (*Ibid*., quoting *People v. Washington*, *supra*, 71 Cal.2d at p. 1176.)

Whether the requirements of the spontaneous statement exception are satisfied in any given case is a question of fact. (*People v. Banks* (2014) 59 Cal.4th 1113, 1163 [disapproved on a different ground in *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3] citing *People v. Washington* (1969) 71 Cal.2d 1170, 1176.) "The determination of the question is vested in the court, not the jury." (*Poggi*, *supra*, 45 Cal.3d at p. 318.) "Thus, if supported by substantial evidence, we must uphold the trial court's determination of preliminary facts." (*People v. Banks*, *supra*, 59 Cal.4th at p. 1163, citing *People v. Brown* (2003) 31 Cal.4th 518, 541.)

As indicated, the lapse of time between the event and the statement, although a factor in determining whether a statement is spontaneous or not, is not determinative. (*People v. Trimble* (1992) 5 Cal.App.4th 1225, 1234.) Thus, a lapse of two days between the event and the statement did not preclude a finding that the statement was spontaneous where the child witness was in a mental state of extreme agitation when she told of defendant's assault on the witness's mother. (*Trimble*, *supra*, 5 Cal.App.4th at p. 1234.) There, the court noted that the witness did not have an opportunity to speak about the incident until after the defendant had left the cabin, where, up to that point, the child had been sequestered with no one in whom to confide.

The crucial element in determining whether a declaration is sufficiently reliable to be admissible under this exception is the mental state of the speaker. """"The nature of the utterance – how long it was made after the startling incident and whether the speaker blurted it out, for example – may be important, but solely as an indicator of the mental state of the declarant . . . . [U]ltimately, each fact pattern must be considered on its own merits, and the trial court is vested with reasonable discretion in the matter."" [Citation.]" (*People v. Vines* (2011) 51 Cal.4th 830, 880.) Here, Isidro experienced pain, stress, and fear, not only because he had just been stabbed, but also because the person who stabbed him was a gang member who would seek retribution against Isidro if he "snitched." [FN 9: There was an alternative basis for admission of Isidro's prior statement. Although the preliminary hearing transcript where Isidro F. testified is not included in this record (the count relating to Isidro F. was originally filed in a separate action, which was consolidated with the action charging defendant with the assault against Scott F. shortly before trial), his prior testimony would likely have been admitted as past recollection recorded pursuant to Evidence Code section 1237, in light of his failure of recollection even after reviewing his prior testimony and the police report of his interview.] We agree with the trial court that Isidro was under stress. However, as the product of extended questioning, the statements were not spontaneous. And, given Isidro's initially expressed fear of retaliation if he "snitched," and the officer's persistent questioning, there is not the usual assurance of reliability inherent in a spontaneous declaration.

However, the admission of the statement was harmless under any standard of prejudice. Other officers responding to the scene saw defendant run into an apartment building where it was learned that defendant's cousin, Ernie, a probationer with search conditions, lived. After defendant was

taken into custody and transported to the station, he was examined by paramedics for injuries he sustained when he jumped from the second-floor window of his cousin's apartment. A black tank top and knife were found in the apartment. And when asked why he was there, defendant volunteered, within earshot of police officers, that he had stabbed someone and run from the police. Even without the statement, defendant would have been pursued when he fled the scene, and the defendant's own statement would have been sufficient to support the conviction.

(Lodgment No. 7, ECF No. 9-12 at 15-19.)

The state court concluded the admission of Fregoso's statement as a spontaneous utterance was error but harmless under any standard. (*Id.*) This Court will analyze the state court's determination of harmlessness under the most demanding of harmless error standards which is applied to errors of federal constitutional dimension, whether the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967). When a state court's determination under *Chapman* is challenged on federal habeas corpus review, a federal court must review the state court's harmlessness determination under AEDPA's standard:

> When a *Chapman* decision is reviewed under AEDPA, "a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable." *Fry [v. Pliler]*, *supra*, [551 U.S.] at 119 [citation omitted] (emphasis in original). And a state-court decision is not unreasonable if "'fairminded jurists could disagree' on [its] correctness." *[Harrington v.] Richter*, *supra*, [562 U.S.] at 101 [citations omitted]. [A petitioner] therefore must show that the state court's decision to reject his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *[Richter,]* 562 U.S., at 103 [citation omitted].

*Davis v. Ayala*, 576 U.S. __, 135 S. Ct. 2187, 2199 (2015).

The state court concluded the following evidence was sufficient to establish Granados's guilt beyond a reasonable doubt even without Fregoso's statement to police: (1) Granados was seen fleeing from the scene of Fregoso's stabbing into an apartment building where Granados's cousin Ernie lived; (2) Granados and a knife wrapped in black t-shirt were discovered inside Ernie's apartment shortly afterward; and (3) Police heard

Granados tell paramedics he had stabbed someone and had run away. (Lodgment No. 1 vol. 3, ECF No. 9-3 at 24-25, 161-62; Lodgment No. 1 vol. 4, ECF No. 9-4 at 14-15.) In addition, Officer Liam Doyle testified that victims of gang violence often are afraid to testify against their attackers. (Lodgment No. 1 vol. 1, ECF No. 9-4 at 32.) A rational jury could conclude from this evidence that Granados was the person who stabbed Fregoso and thus the state court's conclusion that any error was harmless under any standard was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Davis*, 135 S. Ct. at 2199 (internal citations and quotations omitted). Accordingly, the denial of this claim was neither contrary to, nor an unreasonable application of clearly established Supreme Court law. *Bell*, 535 U.S. at 694. Nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). Granados is not entitled to relief as to this claim.

### ii. Confrontation Clause

The California Court of Appeal addressed Granados's claim that Fregoso's statement was erroneously admitted under California Evidence Code § 1240 as follows:

(ii) *Confrontation*

The Confrontation Clause prohibits the admission of testimonial statements of a witness who did not appear at trial unless the witness was unavailable to testify and defendant had a prior opportunity for cross-examination. (*Crawford v. Washington* (2004) 541 U.S. 36, 53–54 [158 L.Ed.2d 177, 124 S.Ct. 1354].) "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police to meet an ongoing emergency." (*Davis v. Washington* (2006) 547 U.S. 813, 822, 828 [165 L.Ed.2d 224, 126 S.Ct. 2266]. In *Davis*, the questions asked by the 911 operator did not render the victims' statements as testimonial, even the operator's effort to establish the identity of the assailant, because it would allow the dispatched officers to know whether they would be encountering a violent felon. (*Davis*, *supra*, 547 U.S. at p. 827.)

Here, other officers had responded to the dispatch relating to Isidro's

stabbing and were aware that the suspect had entered into a nearby apartment complex. Knowing the identity of the perpetrator, relayed to the pursuing officers along with information about the address and identity of defendant's cousin, Ernie, was necessary to inform those dispatched officers who they would encounter and how to proceed.

More significantly, defendant acknowledges that Isidro was present at trial, focusing on his inability to recall forming the basis for his inability to effectively cross-examine the witness. The admission of a prior out-of-court statement does not violate the confrontation clause so long as the declarant is present at trial and the defense is provided an opportunity for effective cross-examination, even if the witness is unable to recall making the prior statement or the circumstances described by the statement. (*People v. Clark* (2011) 52 Cal.4th 856, 927.) "'[T]he Confrontation Clause guarantees only the "opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."'" [Citations.]" (*United States v. Owens* (1988) 484 U.S. 554, 559 [98 L.Ed.2d 951, 108 S.Ct. 838].)

There was no confrontation violation.

(Lodgment No. 7, ECF No. 9-12 at 19-20.)

As the state court correctly noted, *Crawford v. Washington*, 541 U.S. 36 (2004) is the clearly established law which applies to this claim. In *Crawford*, the Supreme Court held that in order for the admission of testimonial evidence to comply with the Sixth Amendment, the declarant must be unavailable and the defendant must have had a prior opportunity for cross-examination. *Id.* at 68. Testimonial evidence includes statements gleaned from police interrogation. *Id.* The state court concluded that Fregoso's statements to police were non-testimonial because they were elicited "to enable police to meet an ongoing emergency. (Lodgment No. 7, ECF No. 9-12 at 19.) This conclusion is questionable given Officer Velasquez's testimony that he questioned Fregoso in the ambulance and at the hospital in order to get a statement from him because he "didn't know whether he was going to make it or not, so [he] wanted to get any type of information, believing that if [Fregoso] did pass away, whatever information I obtained could help catch a murderer." (Lodgment No. 1 vol. 3, ECF No. 9-3 at 113.) But even if

Fregoso's statements were testimonial because they were made in response to police interrogation, the state court was correct to conclude that there was no *Crawford* violation because Fregoso was present at trial. "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59, n.9. "The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.*; *see also Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (stating that "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish") (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).

The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Bell*, 535 U.S. at 694. Nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). Granados is not entitled to relief as to this claim.

### C. *Ground Three: Sufficiency of Evidence*

In ground three, Granados contends there was insufficient evidence presented to support his conviction for active participation in a criminal street gang in count four. (Pet., ECF No. 1 at 8.) Specifically, Granados challenges the sufficiency of the evidence to support the third element of the § 186.22(a) charge in count four. Count four alleged that on October 15, 2011, Granados "willfully, and unlawfully actively participated in a criminal street gang with knowledge that its members engaged in and have engaged in a pattern of criminal gang activity, and willfully promoted, furthered and assisted in any felonious criminal conduct by members of that gang, to wit, Northside Beaumont." (Lodgment No. 2 vol. 2, ECF No. 9-6 at 141-42.) The assault on Willie D. occurred on October 15, 2011. (*Id.*) Granados contends there was no evidence presented to establish any Northside Beaumont gang members participated in the assault on Willie D. Respondent argues the state court's rejection of this claim was a reasonable application of Supreme Court law. (Answer, ECF No. 8-1 at 31-35.)

19cv0517 GPC (NLS)

Granados raised this claim in the petition for review he filed in the California Supreme Court. (Lodgment No. 8, ECF No. 9-13.) The California Supreme Court silently denied the petition. (Lodgment No. 9, ECF No. 9-14.) This Court must therefore "look through" to the last reasoned state court decision that addressed the claims as the basis for the Court's analysis. *Ylst*, 501 U.S. at 805-06. The state appellate court wrote:

> Section 186.22, subdivision (a), operative until January 1, 2017, provided that any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail, or in state prison. The elements of the offense defined by section 186.22, subdivision (a) are: (1) active participation in a criminal street gang, which is more than nominal or passive; (2) knowledge that the gang members engage in or have engaged in a pattern of criminal gang activity; and (3) the willful promotion, furtherance, or assistance in any criminal conduct by members of that gang. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130.) A person who is not a member of a gang, but who actively participates in the gang, can be guilty of active participation. (*Ibid*.)
>
> To establish that a defendant actively participated in a street gang, the evidence must show that he willfully did an act that "promotes, furthers, or assists in any felonious criminal conduct by members of that gang." (§ 186.22, subd. (a).) The "felonious conduct" need not be gang related. (*People v. Albillar* (2010) 51 Cal.4th 47, 51, 59.) However, in advancing, encouraging, contributing to, or helping members of the gang commit felonious conduct, that felonious conduct must be committed by at least two gang members, one of whom can include the defendant if he is a gang member. (*People v. Rodriguez*, *supra*, 55 Cal.4th at p. 1132.) It is not necessary that anyone sustain a conviction for that conduct. (*People v. Valenzuela* (2016) 5 Cal.App.5th 449, 453.) "Gang evidence, including expert testimony, is relevant and admissible to prove the elements of the substantive gang crime and gang enhancements." (*People v. Williams* (2009) 170 Cal.App.4th 587, 609.)
>
> Defendant's argument centers on the fact that while there were other North Side Beaumont gang members at the party, there was no indication that any of those other gang members were involved in the fight, because no one testified that any gang members were in the crowd of people who started

hitting Willie D. while he was fighting with defendant. [FN 10 omitted.] Thus, he argues, although his fellow gang members were present at the party, he was acting alone, and not guilty of committing an underlying felony with at least one other gang member. (*People v. Rodriguez*, *supra*, 55 Cal.4th at p. 1134.)

We disagree. Defendant assaulted Willie D., knocking Willie to the ground. Willie D. was struck from behind by a person with a knife. Willie was struck from all sides. Shawnshana I. testified that this was the first incident at the party involving a group of Hispanic males. The group of Hispanic males then walked down the driveway, toward the street, followed by Ian R.

Although the jury found defendant not guilty of stabbing Ian R., Ian R. testified that Willie D. announced the party was over so everyone started to leave. As Ian started to walk out, he saw his friend Daniel Gonzalez L. [FN 11 omitted.] fighting with a group of kids that included defendant and his friends. Defendant, Ernie Granados, and Gilbert V. circled his friend in the street. Ian saw Daniel Gonzalez L. fighting with Gilbert V. and Ernie Granados, and Ian started fighting as well. He was stabbed when he tried to pull his friend away.

The gang expert testified that in addition to defendant, his cousin Ernie was also a gang member. There was substantial evidence presented to the jury that defendant acted in concert with at least one other gang member while engaged in the fights that led to the injuries of Willie D.

(Lodgment No. 7, ECF No. 9-12 at 20-23.)

The Due Process Clause of the Constitution guarantees defendants the right to be convicted only upon proof of every element of a crime beyond a reasonable doubt. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (citing *In re Winship*, 397 U.S. 358, 364 (1970)). On federal habeas corpus review of a conviction on sufficiency of evidence grounds, however, a petitioner "faces a heavy burden" to establish a due process violation. *Id*. The Ninth Circuit has described a petitioner's burden as follows:

First, he must meet the burden under *Jackson v. Virginia* of showing that "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 [citations

omitted] (1979) (Stevens, J., concurring) (emphasis in original). Second, after the passage of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), the standards of Jackson are applied "with an additional layer of deference," requiring the federal court to determine "whether the decision of the [state court] reflected an 'unreasonable application of' *Jackson* . . . to the facts of this case." *Juan H.*, 408 F.3d at 1274–75; *see also Bruce v. Terhune*, 376 F.3d 950, 960 (9th Cir. 2004) (O'Scannlain, J., concurring).

*Maquiz v. Hedgpeth*, 907 F.3d 1212, 1217 (9th Cir. 2018).

While circumstantial evidence can be sufficient to support a conviction, "[s]peculation and conjecture cannot take the place of reasonable inferences and evidence . . . ." *Id.* at 1218; *Juan H.*, 408 F.3d at 1279; *United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir. 2000) ("mere suspicion or speculation cannot be the basis for logical inferences"). A federal habeas court must "mindful of 'the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review.'" *Juan H.*, 408 F.3d at 1274 (quoting *Wright v. West*, 505 U.S. 277, 296-97 (1992)). Deference under AEDPA, however, "does not imply abandonment or abdication of judicial review." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). In determining whether sufficient evidence has been presented, the Court refers to the elements of the crime as defined by state law. *See Jackson*, 443 U.S. at 324, n.16; *Juan H.*, 408 F.3d at 1276.

The California Supreme Court has defined the elements of California Penal Code § 186.22(a) as follows:

> First, active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; second, knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and third, the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang. (*People v. Lamas* (2007) 42 Cal.4th 516, 523, 67 Cal.Rptr.3d 179, 169 P.3d 102 (*Lamas* ).) A person who is not a member of a gang, but who actively participates in the gang, can be guilty of violating section 186.22(a). (§ 186.22, subd. (i).)

*People v. Rodriguez*, 55 Cal. 4th 1125, 1130 (2012).

"[T]he gang offense requires felonious criminal conduct committed by at least two '[gang] members,' including any defendant who is a member of 'that gang.' [Citation.]" *People v. McDonald*, 238 Cal. App. 4th 16, 38 (2015) (citing *Rodriguez*, 55 Cal. 4th at 1140). "Therefore, to satisfy the third element, a defendant must willfully advance, encourage, contribute to, or help members of his gang commit felonious criminal conduct. The plain meaning of section 186.22(a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member." *Rodriguez*, 55 Cal. 4th at 1132.

Viewing the evidence in the light most favorable to the prosecution, as this Court is required to do under *Jackson*, there was sufficient evidence presented to support the jury's conclusion that Granados "willfully advance[d], encourage[d], contribute[d] to, or help[ed] members of his gang commit felonious criminal conduct," and that he did so with at least one other gang member. *Rodriguez*, 55 Cal. 4th at 1132. Granados helped members of his gang, North Side Beaumont, commit "felonious criminal conduct," i.e., assault with a deadly weapon on Davis, with another gang member, his brother Eddie. Victim Willie Davis testified he asked Granados to leave his daughter's party because he wasn't invited. (Lodgment No. 1 vol. 1, ECF No. 9-1 at 243-44.) Granados turned around and punched Davis and they then started fighting. (*Id.* at 246-47.) Davis then felt he was "getting hit from all sides." (*Id.* at 247.) Davis testified that at some point, he was hit in the head and face with the butt of a knife. (*Id.* at 246.) Although Davis denied it at trial, Officer Ditty who responded to the scene testified that Davis told him the same person who punched him swung a knife at him. (Lodgment No. 1 vol. 3, ECF No. 9-3 at 43.) Davis told Ditty that he dodged the knife, fell to the ground and was attacked by several people. (*Id.* at 44.) Davis identified Granados as the person who punched him and swung a knife at him. (*Id.* 45-47.) Davis's daughter Shawnie, also identified Granados as the person who attacked Davis. (*Id.* at 48.)

Ian Ross was at the same party and was stabbed. (*Id.* at 69-70.) Ross was eventually transported to the hospital to be treated for his injuries and Officer Craig

Hooper spoke to him at the hospital. (*Id.* at 70-71.) Ross told Hooper he was trying to help a friend who was in a fight with Granados, Granados's brother Ernie Granados and Gilbert Valdivia when he was stabbed. (*Id.* at 72-73.)

Officer Liam Doyle testified as a gang expert. (Lodgment No. 1 vol. 4, ECF No. 9-4 at 2-41.) In his expert opinion, both Bobby Granados and his brother Ernie Granados are a member of the North Side Beaumont gang. (*Id.* at 44-51, 58.) Doyle also testified that gangs achieve respect by having their members commit violent acts in public and that committing violent acts enhances the reputation of the gang. (*Id.* at 27, 32-33.)

In addition, the state court's conclusion that there was sufficient evidence to support Granados's conviction for California Penal Code § 186.22(a) was not contrary to, nor an unreasonable application of, *Jackson*. *Bell*, 535 U.S. at 694. Nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). Granados's claim fails.

### D. *Ground Four: Unanimity Instruction*

In ground four, Granados argues the trial court violated his due process rights when it failed to give the jury a unanimity instruction requiring them to agree on which acts constituted the predicate offenses for a conviction on count four, active participation in a criminal street gang, a violation of California Penal Code § 186.22(a). (Pet., ECF No. 1 at 10.) Respondent counters that there is no federal constitutional right to a unanimous verdict and thus Granados has failed to state a federal claim. (Answer, ECF No. 8-1 at 35-36.)

Granados raised this claim in the petition for review he filed in the California Supreme Court. (Lodgment No. 8, ECF No. 9-13.) The California Supreme Court silently denied the petition. (Lodgment No. 9, ECF No. 9-14.) This Court must therefore "look through" to the last reasoned state court decision that addressed the claims as the

/ / /

/ / /

/ / /

basis for the Court's analysis. *Ylst*, 501 U.S. at 805-06. The state appellate court analyzed the claim as follows:

> As we pointed out previously, the elements of active participation in a street gang do not include a requirement of proving a "predicate offense." That element pertains to whether there has been a "pattern of criminal gang activity" by which an association qualifies as a criminal street gang. (§ 186.22, subd. (e).) Defendant does not argue that North Side Beaumont is not a criminal street gang, and there was no requirement that the jury determine whether predicate offenses were established, so we need not decide whether the court erred in not instructing the jury to determine the existence of predicate offenses.

> Our Constitution (Cal. Const., art. I, § 16) requires that each individual jury be convinced, beyond a reasonable doubt, that the defendant committed the specific offense he is charged with. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132; *People v. Hernandez* (2013) 217 Cal.App.4th 559, 569.) "[W]hen the evidence suggests more than one discrete crime, either (1) the prosecution must elect among the crimes or (2) the trial court must instruct the jury that it must unanimously agree that the defendant committed the same criminal act. [Citations.]" (*Hernandez*, *supra*, 217 Cal.App.4th at p. 569.)

> However, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis, or the "theory," whereby defendant is guilty, even if the theories are based on different facts. (*People v. Grimes* (2016) 1 Cal.5th 698, 727; *People v. Jenkins* (2000) 22 Cal.4th 900, 1025.) Thus, in a situation where defendant argues the facts would support aiding and abetting liability and liability as a direct perpetrator, the jury need not unanimously agree on the precise factual details of how a killing under one or the other theory occurred in order to convict defendant of first degree murder. (*Ibid.*)

> Additionally, "'[n]either an election nor a unanimity instruction is required when the crime falls under the "continuous conduct" exception.'[Citations.]" (*People v. Jo* (2017) 15 Cal.App.5th 1128, 1178.)

> Under the "continuous conduct" rule, a unanimity instruction is not required when "the acts are so closely connected as to form part of one transaction" or "the defendant offers essentially the same defense to each of

the acts and there is no reasonable basis for the jury to distinguish between them." (*People v. Stankewitz* (1990) 51 Cal.3d 72, 100.) This specific offense does not involve a "discrete crime" or "act;" it only requires that defendant promote, further, or assist in any felonious criminal conduct by members of that gang.

Here, the crime of active participation is conceptually similar to liability as an aider and abettor, particularly where the gravamen of the crime is the promotion, furtherance, or assistance of the felonious conduct by other gang members, and not proof of the commission of a specific offense by defendant. It was not necessary for the jury to agree on the precise factual details of either assault crime to determine whether defendant was promoting, furthering or assisting in any felonious conduct by members of the gang. Thus, the court was not required to instruct the jury on unanimity. There was no error.

(Lodgment No. 7, ECF No. 9-12 at 23-26.)

The Supreme Court has held that there is no federal constitutional right to a unanimous verdict. *Apodaca v. Oregon*, 406 U.S. 404, 406 (1972). Nor is there a "general requirement that the jury reach agreement on the preliminary factual issues which underly the verdict." *Schad v. Arizona*, 501 U.S. 624, 631-32, 645 (1991). In the absence of clearly established Supreme Court law supporting Granados's claim, therefore, the state court's denial of the claim cannot be contrary to, or an unreasonable application of, clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1); *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

Moreover, to the extent Granados claims the state court's denial of this claim was a violation of state law, he is not entitled to relief because federal habeas relief is not available for a state court's interpretation of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Even if Granados could challenge the unanimity instructions on state law grounds, the state appellate court's denial of Granados's claim is consistent with California law. As the state court noted, a unanimity instruction must be given in California "if the prosecution presents evidence of multiple acts to prove a single count." CALCRIM No. 3500 (2006), Bench Notes (citing *People v. Russo*, 25 Cal. 4th 1124,

1132 (2001)).  However, "when a charge is prosecuted under different legal theories, the jury need not agree unanimously on which theory applies."  *People v. Grimes*, 1 Cal. 5th 698, 727 (2016):

> A unanimity instruction is required if there is evidence that more than one crime occurred, each of which could provide the basis for conviction under a single count.  (*People v. Diedrich* (1982) 31 Cal.3d 263, 281, 182 Cal.Rptr. 354, 643 P.2d 971 [when evidence suggested more than one act of bribery, jury must agree unanimously which act was the basis for conviction]; see *People v. Beardslee* (1991) 53 Cal.3d 68, 92, 279 Cal.Rptr. 276, 806 P.2d 1311 ["A requirement of jury unanimity typically applies to acts that could have been charged as separate offenses"].)  But the unanimity instruction is not required "'where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event.'"

*Id.*; *see also Russo*, 25 Cal. 4th at 1134-35 (stating that "the jury must agree on a 'particular crime' . . . [b]ut unanimity as to exactly how the crime was committed is not required.")

Granados was charged with a one specific crime in count four, active participation in a criminal street gang to promote, further or assist felonious conduct by that gang. (Lodgment No. 2 vol. 1, ECF No. 9-6 at 140-43.)  There were two theories of liability for the "felonious conduct" requirement of count four, that Granados actually committed a felony offense or that he aided and abetted the felony offense.  (*Id*. at  254; Lodgment No. 1 vol. 4. ECF No. 9-4 at 197-99.)  Under California law, no unanimity instruction was needed because the jury was not required to agree on exactly how the crime alleged in count four was committed.  *Russo*, 25 Cal. 4th at 1134-35.

Even if the failure to give a unanimity instruction was erroneous, instructional error can form the basis for federal habeas corpus relief only if it is shown that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' [citation omitted]."  *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (citing *Cupp v. Naugh'ten*, 414 U.S. 141, 146 (1973)); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  "The burden on the habeas petitioner is especially heavy where, as here, the

alleged error involves the failure to give an instruction." *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (quoting *Estelle*, 502 U.S. at 72). Jury instructions cannot be judged in isolation, however. *Estelle*, 502 U.S. at 72. Rather, they must be considered in the context of the entire trial record and the instructions as a whole. *Id*. The instructions for count four explicitly told the jury they were required to find, beyond a reasonable doubt, that Granados actively participated in a criminal street gang, the gang engaged in a pattern of criminal activity, and Granados willfully assisted, further or promoted the felonious criminal conduct by either directly committed the felony or aiding and abetting it. (Lodgment No. 2 vol. 1, ECF No. 220, 253-54.) Given the totality of the instructions, "the ailing instruction by itself [did not] so infect[] the entire trial that the resulting conviction violates due process.' [citation omitted]." *Clark*, 450 F.3d at 904.

The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Bell*, 535 U.S. at 694. Nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). Accordingly, Granados is not entitled to relief as to this claim.

# V. **CONCLUSION**

After considering the Petition, the Answer and Memorandum of Points and Authorities in Support of the Answer, the Traverse, the lodgments and other documents filed in this case, as well as the legal arguments presented by both parties, and for all the foregoing reasons, the petition is **DENIED**.

Rule 11 of the Rules Following 28 U.S.C. § 2254 require the District Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254 (West Supp. 2019). A COA will issue when the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (West 2019) ; *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005). A "substantial showing" requires a demonstration that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Beaty v. Stewart*, 303 F.3d 975, 984 (9th Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473,

484 (2000)). Here, the Court concludes Granados has not made the required showing, and therefore a certificate of appealability is **DENIED**.

      **IT IS SO ORDERED.**

Dated: July 22, 2019

Hon. Gonzalo P. Curiel
United States District Judge